IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL WHOOTEN, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | CIVIL NO. 4:CV-04-223 |
| | : | |
| ANTHONY BUSSANICH, ET AL., | : | |
| | : | (Judge Jones) |
| Defendants | : | |

**MEMORANDUM AND ORDER**

September 2, 2005

**Background**

Paul Whooten ("Plaintiff" or "Whooten"), an inmate presently confined at the United States Penitentiary, Lewisburg, Pennsylvania ("USP-Lewisburg"), initiated this combined pro se civil rights/Federal Tort Claims Act ("FTCA") action. His amended complaint also sets forth claims under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act. Service of the complaint was previously ordered.

Named as defendants are the United States of America and the following USP-Lewisburg officials: Associate Warden S. Hobart; Clinical Director A.

Bussanich, M. D.; Health Services Administrator J. Hemphill and Assistant Health Services Administrator J. Zagame.

Plaintiff has been confined at USP-Lewisburg since April 12, 2001. His complaint asserts that on February 24, 2003, Physician's Assistant ("PA") Kondrat prescribed him Prednisone for his chronic cluster headaches. After taking this medication for a short period, Whooten states that he began vomiting blood and experiencing severe stomach pain. As a result, PA Ritter discontinued his use of prednisone. In March 2003, PA Kondrat prescribed Imitrex for Whooten's cluster headaches. After taking this medication numerous times, it purportedly caused him to suffer high blood pressure, dizziness, headaches, blurred vision and tremors. Consequently, his use of Imitrex was stopped.

Thereafter, Plaintiff was prescribed Verapamil for his headaches. This medication allegedly caused dizziness, fatigue, and blurred vision. As a result, Whooten stopped taking Verapamil. On December 17, 2003, Doctor Bussanich allegedly prescribed Toredol for the Plaintiff's condition. Two days later, Whooten allegedly suffered severe pain and coughed up some blood.

Plaintiff contends that his prior medical history precluded his taking any of

the above described medications.[1]  Whooten adds that Doctor Bussanich was informed that neurologists who had previously treated him "had prescribed a combination of narcotic and prophylactic drugs that were effective."  Rec. Doc. 1. ¶ 12.  Whooten adds that the only presently available medication which is effective for his cluster headaches is Nalbuphine Hydrochloride.  However, although Doctor Bussanich previously provided him with one (1) Nalbuphine injection each month, said Defendant will no longer prescribe that medication.

Plaintiff adds that during March 2004 a neurologist, Doctor Rajjoub, recommended that he be provided Nalbuphine as needed for pain.  The complaint contends that Bussanich subsequently informed Whooten that he disagreed and would not follow Doctor Rajjoub's recommendation.  As a result of Doctor Bussanich's refusal, Whooten contends that he is stricken with daily debilitating headaches and depression.  Plaintiff concludes that Defendants were deliberately indifferent and/or negligent for: (1) prescribing medications which were clearly improper based on his medical history; (2) delaying and/or denying a referral to a neurologist and (3) denying him effective medications based on an incorrect assessment that he was a drug seeker.  His complaint seeks compensatory and

---

[1] For example, Whooten indicates that he should not have been prescribed Imitrex because of his history of hypertension.

punitive damages as well as injunctive relief.

Defendants claim entitlement to an entry of dismissal/summary judgment on the grounds that: (1) Zagame and Hemphill are employees of the United States Public Health Service and thus cannot be sued in an action brought pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) ("Bivens action"); (2) there are no allegations asserted against Doctor Bussanich which rise to the level of an Eighth Amendment violation; (3) the claims against Defendant Hobart are improperly premised on a theory of respondeat superior; (4) Defendants are entitled to qualified immunity; (5) Plaintiff's FTCA claim is meritless; (6) neither a viable ADA nor a Rehabilitation Act claim is set forth in the complaint.

**Discussion**

**A.     Standard of Review**

Defendants' motion is accompanied by evidentiary materials outside the pleadings which are relevant for purposes of rendering a decision on their respective arguments. Rule 12(b) provides in part as follows:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the

4

> motion shall be treated as one for summary judgment
> and disposed of as provided in Rule 56, and all parties
> shall be given reasonable opportunity to present all
> material made pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12(b).  The Court will not exclude the evidentiary materials accompanying Defendants' motion.  Thus, their motion will be treated as solely seeking summary judgment.

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).

> [T]he plain language of Rule 56(c) mandates the entry of
> summary judgment, after adequate time for discovery and upon
> motion, against a party who fails to make a showing sufficient
> to establish the existence of an element essential to that party's
> case, and on which that party will bear the burden of proof at
> trial.  In such a situation, there can be "no genuine issue as to
> any material fact," since a complete failure of proof concerning
> an essential element of the nonmoving party's case necessarily
> renders all other facts immaterial.  The moving party is
> "entitled to a judgment as a matter of law" because the
> nonmoving party has failed to make a sufficient showing on an
> essential element of her case with respect to which she has the
> burden of proof.  "[T]he standard [for granting summary
> judgment] mirrors the standard for a directed verdict under
> Federal Rule of Civil Procedure 50(a)...."

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence

of a genuine issue of material fact.  The moving party can discharge that burden by "'showing' . . . that there is an absence of evidence to support the nonmoving party's case."  Celotex, supra, 106 S.Ct. at 2553-54.  Once the moving party has satisfied its burden, the nonmoving party must present "affirmative evidence" to defeat the motion, consisting of verified or documented materials.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  Issues of fact are "genuine only if a reasonable jury, considering the evidence presented could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988).  Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment.  Id.  In evaluating a motion for summary judgment, the entire record must be examined in the light most favorable to the nonmoving party.

**B.   Public Health Service**

Defendants' initial argument maintains that Health Services Administrator Hemphill and Assistant Health Services Administrator Zagame enjoy absolute immunity with respect to Plaintiff's Bivens claims because the undisputed record establishes that they are  employees of the United States Department of Public Health Service.

In Cuoco v. Moritsugu, 222 F.3d 99, 107 (2nd Cir.  2000), the Court of Appeals for the Second Circuit concluded that under 42 U.S.C. § 233(a), members

of the Public Health Service were absolutely immune from suit in a Bivens action if the injury for which compensation is sought resulted from the performance of a medical or related function while acting within the scope of their office or employment. Section 233(a) adds that an FTCA claim is the exclusive remedy for the performance of medically related functions by employees of the Public Health Services.

Since the undisputed record establishes that Defendants Zagame and Hemphill are employees of the Public Health Service, they are entitled to entry of summary judgment with respect to the Plaintiff's Bivens claims.

**C.    Deliberate Indifference**

The moving Defendants next argue that summary judgment is appropriate in favor of Doctor Bussanich because the undisputed facts establish that there was no deliberate indifference to any serious medical need of the Plaintiff. Rather, they contend that this is simply a case where a prisoner is disagreeing with the type of medication which he is being prescribed.

Pursuant to the Supreme Court's decision in Estelle v. Gamble, 429 U.S. 97 (1976), an inmate plaintiff must demonstrate that prison officials have breached the standard of medical treatment to which he was entitled. The government has an "obligation to provide medical care for those whom it is punishing by incarceration." Id. at 103.

7

However, a constitutional violation does not arise unless there is "deliberate indifference to serious medical needs of prisoners" which constitutes "unnecessary and wanton infliction of pain." Id. at 104 (citation omitted). The Court of Appeals for the Third Circuit has held that not every injury or illness enjoys constitutional protection; only serious medical needs are actionable. Colburn v. Upper Darby Township, 946 F.2d 1017, 1023 (3d Cir. 1991); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978). Furthermore, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

A later decision by the Supreme Court addressed the issue of what standard should be applied in determining deliberate indifference in Eighth Amendment cases. The Court established that the proper analysis is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994). The Court of Appeals for the Third Circuit in Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993), added that a non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when he is already receiving treatment by the prison's medical staff. However, where a failure or delay in

providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented. See id.

Under Farmer, deliberate indifference is a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety. Beers-Capitol v. Whetzel, 256 F. 3d 120, 125 (3d Cir. 2001). This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. In Beers-Capitol it was also recognized that a defendant's knowledge of a risk can be proved indirectly by circumstantial evidence.

As previously noted, Whooten's Bivens claims are threefold. First, he contends that he was prescribed medications which were clearly inappropriate on the basis of his prior medical history. Second, he claims that there was an unwarranted delay by Doctor Bussanich in referring him to a neurologist. His remaining assertion is that Bussanich refused to provide him with needed medication based on an incorrect assessment that the Plaintiff was a drug seeker.

Based on a review of the complaint, Plaintiff acknowledges that Doctor Bussanich and the USP-Lewisburg medical staff have provided him with treatment for his cluster headaches since his arrival at that prison. By his own admission, Whooten has been prescribed numerous medications. Plaintiff was

9

also seen by a neurologist Doctor Rajjoub, and a third physician, Doctor Salam, was also involved in his care. It is clear that the Plaintiff's allegations against Doctor Bussanich cannot support a claim of deliberate indifference. His complaint acknowledges that he was provided with ongoing care and his claims sound only in negligence, primarily that Doctor Bussanich made a negligent assessment by labeling Whooten as a drug seeker and thereafter provided ineffective treatment on the basis of the allegedly erroneous assessment. Thus, under the standards established in <u>Estelle</u>, they cannot support a <u>Bivens</u> claim. The Court will grant summary judgment in favor of Doctor Bussanich with respect to the <u>Bivens</u> portion of this action.

### D.     <u>Respondeat Superior</u>

Defendant Hobart argues entitlement to summary judgment because there are no claims set forth showing that he had any personal involvement in any violation of the Plaintiff's constitutional rights. <u>See</u> Rec. Doc. 39, at 16. Consequently, the moving Defendant maintains that Whooten is attempting to establish liability against him solely on the basis of his supervisory duties as Associate Warden.

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a

right, privilege, or immunity secured by the Constitution or laws of the United States.  Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Civil rights claims cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim.  See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976).  As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . .  [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Plaintiff asserts that he informed Defendant Hobart of his dissatisfaction with Doctor Bussanich's treatment of his cluster headaches.  See Rec. Doc. 1, ¶ 15.  Hobart subsequently informed Whooten that he had assigned Defendant Zagame to "resolve the matter."  Id.  Thereafter, Plaintiff alleges that he notified Hobart that the matter was still unresolved and that the Defendant failed to take needed action.

Under the standards developed in Rode, 845 F.2d 1195 (3d Cir. 1988), such

an assertion is insufficient for establishing liability under Bivens.  Hobart is not identified as being a member of the prison's medical staff and there are no allegations that the Associate Warden had direct involvement or acquiescence with respect to any decisions made regarding Whooten's medical treatment.  As noted by the Defendants, Plaintiff acknowledges that Hobart did exactly what he should have done, namely, refer the prisoner's complaints to a qualified, supervisory member of the prison's medical department.   Since Whooten admits that Defendant Hobart, a non-healthcare professional,  took appropriate action when advised of the prisoner's disagreement with his medical treatment, under the standards announced in Durmer, there is no basis for a claim of deliberate indifference.  Whooten is also precluded under Rode and Hampton from establishing liability against Hobart solely on the basis of his supervisory capacity within the prison.  In conclusion, Associate Warden Hobart is likewise entitled to an entry of summary judgment.

**E.   Qualified Immunity**

Qualified immunity is an affirmative defense which must be pleaded by the defendant official. Id.; Verney v. Pennsylvania Turnpike Comm'n, 881 F. Supp. 145, 149 (M.D. Pa. 1995). In Harlow v. Fitzgerald, 457 U.S. 800 (1982), the United States Supreme Court held "that government officials performing discretionary functions generally are shielded from liability for civil damages

insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818; Sherwood v. Mulvihill, 113 F.3d 396, 398-99 (3d Cir. 1997); Showers v. Spangler, 957 F. Supp. 584, 589 (M.D. Pa. 1997).  It has also been held that "qualified immunity is coextensive for suits brought against state officials under 42 U.S.C. § 1983 (1982), and for suits brought directly under the Constitution against federal officials." People of Three Mile Island v. Nuclear Regulatory Commissioners, 747 F.2d 139, 144 n.9 (3d Cir. 1984) (citing Butz v. Economou, 438 U.S. 478, 504 (1978)).

The United States Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001), established a two part test for analyzing qualified immunity claims.  See also Curley v. Klem, 298 F.3d 271 (3d Cir. 2002); Bennett v. Murphy, 274 F.3d 133 (3d Cir. 2002).  The initial inquiry in a qualified immunity examination is whether "the facts taken in the light most favorable to the plaintiff show a constitutional violation." Bennett, 274 F.3d at 136.

This Court has already concluded that Plaintiff's allegations do not set forth a viable Bivens claim.  Consequently, the first prong of Saucier has not been satisfied.  Further discussion of the Defendants' qualified immunity argument is not required.

**F.    FTCA**

Defendants next argue that they are also entitled to summary judgment with respect to the FTCA portion of the complaint because Plaintiff cannot satisfy his burden of proof. The FTCA provides a remedy in damages for the simple negligence of employees of the United States to protect federal inmates. United States v. Muniz, 374 U.S. 150, 150 (1963). A plaintiff pursuing an FTCA claim must show: (1) that a duty was owed to him by a defendant; (2) a negligent breach of said duty; and (3) that the negligent breach was the proximate cause of the plaintiff's injury/loss. Mahler v. United States, 196 F. Supp. 362, 364 (W.D. Pa. 1961), aff'd, 306 F.2d 713 (3d Cir.), cert. denied, 371 U.S. 923 (1962).

It is well-settled that a federal district court addressing an FTCA action must apply the law of the state, in this case Pennsylvania, in which the alleged tortious conduct occurred. 28 U.S.C. § 1346(b) (1996); Toole v. United States, 588 F.2d 403, 406 (3d Cir. 1978); O'Neal v. Department of Army, 852 F. Supp. 327, 334-35 (M.D. Pa. 1994); Turner v. Miller, 679 F. Supp. 441, 443 (M.D. Pa. 1987). However, in cases such as this which involve federal prisoners, it has been recognized that the government's duty of care is one of ordinary diligence. See 18 U.S.C. § 4042; Turner, 679 F. Supp. at 443. The applicable law with respect to the burden and quantum of proof under the FTCA remains that of the state in which the alleged tortious conduct occurred. Hossic v. United States, 682 F. Supp. 23, 25 (M.D. Pa. 1987).

Under Pennsylvania law, a plaintiff is required to show that the defendant's negligence was the proximate cause of his injury by a preponderance of the evidence. Baum v. United States, 541 F. Supp. 1349, 1351 (M.D. Pa. 1982). Furthermore, Pennsylvania law defines proximate cause as causation which was a substantial factor in bringing about the injury. Hamil v. Bashline, 392 A.2d 1280, 1284 (Pa. 1978).

It is undisputed that the Federal Bureau of Prisons owed Whooten a duty to provide him with timely and appropriate medical care.  Along with an opposing brief, Plaintiff has submitted various medical records establishing his prior history of cluster headaches, the treatment/medications  provided and evidence that he previously suffered side effects, including intestinal bleeding, from the use of certain medication. See Rec. Doc. 47.  Based on the Plaintiff's submissions, the Court finds that the Defendants' wholly conclusory argument that he has not plead a case of  prima facie negligence and failed to offer any supporting expert medical testimony lacks persuasion.  Plaintiff's FTCA claims of negligent medical care while confined at USP-Lewisburg will be allowed to proceed.

**G.   ADA**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be

subjected to discrimination by such entity." 42 U.S.C. § 12132.[2]  The ADA seeks "to assure even handed treatment and the opportunity for [disabled] individuals to participate in and benefit from programs [receiving financial assistance]." Southeastern Community College v. Davis, 442 U.S. 397 (1979);[3] P.C. v. McLaughlin, 913 F.2d 1033, 1041 (2d Cir. 1990).

It has been recognized that the provisions of the ADA are applicable to prisoners confined in state correctional institutions.  See  Pa. Dept. of Corrections v. Yeskey, 524 U.S. 206 (1998).  However, absent an explicit waiver of sovereign immunity, the United States is generally immune from suit.[4]  United States v. Mitchell, 445 U.S. 535, 538 (1980).  This "immunity is jurisdictional in nature," FDIC v. Meyer, 510 U.S. 471, 475  (1994), and extends to government agencies and employees.  Antol v. Perry, 82 F.3d 1291, 1296 (3d Cir. 1996).

Federal detention centers are not protected by the ADA.  Hurtado v. Reno,

---

[2] The regulations implementing the ADA define a "qualified individual with a disability" as:
> "An individual with a disability who, with or without reasonable modifications to rules, policies or practices, . . . meets the essential eligibility requirements for the . . . participation in programs or activities provided by a public entity."

28 C.F.R. § 35.104 (1993).

[3] The "evenhanded treatment" requirement does not, however, impose an affirmative obligation on public entities to expand existing programs but only that disabled individuals receive the same treatment as those who are not disabled.

[4] "Congress has not waived sovereign immunity for damages claims for constitutional violations." Germosen v. Reno, Civil No. 99-1268, slip op. at 13 (M.D. Pa. Sept. 20, 2000)(Vanaskie, C.J.).

16

34 F. Supp.2d 1261, 1264 (D. Col 1999).  The ADA does not contain a waiver of sovereign immunity and thus, does not apply to the federal government.  Crowder v. True, 845 F. Supp. 1250 (N.D. Ill 1994).  Consequently, the amended complaint to the extent that it seeks to assert an ADA claim regarding Whooten's federal incarceration is subject to dismissal.

**H.    Rehabilitation Act**

The Rehabilitation Act ("RA") , 29 U.S.C. § 794, prohibits exclusion of a disabled person from a program that receives federal financial assistance solely by reason of his or her disability.  In Yeskey v. Commonwealth of Pennsylvania, 118 F. 3d 168 (3d Cir. 1997), aff'd  534 U.S. 206 (1998), the Court of Appeals for the Third Circuit indicated that claims relating to the alleged exclusions of disabled persons from prison employment could be properly raised under the RA.

Based on this Court's review of the undisputed record, the Plaintiff has not satisfied his burden of showing that he is a disabled person who was excluded from a program or activity on the  basis of a disability.  His claim of being denied proper medical care does not set forth a viable RA claim.  Consequently, Defendants' request for summary judgment with respect to Whooten's RA claim will be granted.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendants' Motion to Dismiss or in the Alternative for Summary Judgment is construed as solely seeking summary judgment.

2. The Defendants' Summary Judgment Motion (doc. 36) is GRANTED with the exception of Plaintiff's FTCA claims.

3. Summary judgment is entered in favor of Defendants Hobart, Bussanich, Zagame and Hemphill.

4. The FTCA claims against Defendant United States of America will be allowed to proceed.

s/ John E. Jones III<br>
JOHN E. JONES III<br>
United States District Judge