IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL WHOOTEN, | : | |
| | : | |
| Plaintiff, | : | CIVIL NO. 4:CV-04-223 |
| | : | |
| v. | : | (Judge Jones) |
| | : | |
| ANTHONY BUSSANICH, et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

**January 29, 2007**

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

On January 30, 2004, Paul Whooten ("Plaintiff" or "Whooten"), an inmate presently confined at the United States Penitentiary, Lewisburg, Pennsylvania ("USP-Lewisburg"), initiated this combined pro se civil rights/Federal Tort Claims Act ("FTCA") action. (Rec. Doc. 1). Plaintiff also set forth claims under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). Named as Defendants were the United States of America and the following USP-Lewisburg officials: Associate Warden S. Hobart; Clinical Director A. Bussanich, M. D.; Health Services Administrator J. Hemphill; and Assistant Health Services Administrator J. Zagame.

1

By Memorandum and Order dated September 2, 2005 (doc. 52), Defendants' Motion to Dismiss or in the Alternative for Summary Judgment (doc. 36) was construed as solely seeking summary judgment. The Motion (doc. 36) was granted with the exception of Plaintiff's FTCA claims against the United States, regarding the medical treatment he received at USP-Lewisburg. [1]

According to the Complaint (doc. 1), on February 24, 2003, USP-Lewisburg Physician's Assistant ("PA") Kondrat prescribed Prednisone to Plaintiff for his chronic cluster headaches. After taking the medication for a short period, Whooten states that he began vomiting blood and experiencing severe stomach pain. As a result, PA Ritter discontinued Plaintiff's use of Prednisone.

PA Kondrat then prescribed Imitrex for Whooten's cluster headaches. However, the Imitrex was stopped after the inmate began suffering high blood pressure, dizziness, headaches, blurred vision, and tremors. Plaintiff was next prescribed Verapamil for his headaches. Whooten stopped taking the Verapamil because it allegedly caused dizziness, fatigue, and blurred vision. On December 17, 2003, Doctor Bussanich prescribed Toredol for Plaintiff's condition. Two

---

[1] Summary judgment was entered in favor of Defendants Hobart, Bussanich, Zagame, and Hemphill.

days later, Whooten purportedly suffered severe pain and coughed up some blood.

Plaintiff contends that his prior medical history precluded his taking any of the above described medications.[2] Whooten adds that Doctor Bussanich was informed that neurologists who had previously treated him "had prescribed a combination of narcotic and prophylactic drugs that were effective." (Rec. Doc. 1, ¶ 12). Whooten adds that the only presently available medication that is effective for his cluster headaches is Nalbuphine Hydrochloride. However, although Doctor Bussanich previously provided him with one (1) Nalbuphine injection each month, said Doctor will no longer prescribe that medication.

Plaintiff adds that in March 2004 a neurologist, Doctor Rajjoub, recommended that Plaintiff be provided Nalbuphine as needed for pain. The Complaint (doc. 1) contends that Doctor Bussanich subsequently informed Whooten that he disagreed and would not follow Doctor Rajjoub's recommendation. As a result of Doctor Bussanich's refusal, Whooten claims that he is stricken with daily debilitating headaches and depression. Plaintiff seeks relief under the FTCA on the basis that the USP-Lewisburg Medical Staff were negligent in: (1) prescribing medications that were clearly improper based on his

---

[2] For example, Whooten indicates that he should not have been prescribed Imitrex because of his history of hypertension.

prior medical history; (2) delaying and/or denying a referral to a neurologist; and (3) denying him effective medications based on an incorrect assessment that he was a drug seeker.

The Remaining Defendant, the United States, initially claims entitlement to summary judgment on the grounds that Plaintiff has failed to produce a medical expert to support his surviving FTCA claim.

**DISCUSSION:**

**A.     Standard of Review**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.  "[T]he standard [for granting summary judgment]

mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)...."

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party can discharge that burden by "'showing' . . . that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. Once the moving party has satisfied its burden, the nonmoving party must present "affirmative evidence" to defeat the motion, consisting of verified or documented materials. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). Issues of fact are "genuine only if a reasonable jury, considering the evidence presented could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment. Id. In evaluating a motion for summary judgment, the entire record must be examined in the light most favorable to the nonmoving party.

**B.    Analysis**

The FTCA provides a remedy in damages to inmates who suffer personal injuries during incarceration as a result of the negligence of United States employees. United States v. Muniz, 374 U.S. 150, 150 (1963). A plaintiff

pursuing an FTCA claim must show: (1) that a duty was owed to him by a defendant; (2) a negligent breach of said duty; and (3) that the negligent breach was the proximate cause of the plaintiff's injury/loss. Mahler v. United States, 196 F. Supp. 362, 364 (W.D. Pa. 1961), aff'd, 306 F.2d 713 (3d Cir. 1962), cert. denied, 371 U.S. 923 (1962).

It is well-settled that a federal district court addressing an FTCA action must apply the law of the state, in this case Pennsylvania, in which the alleged tortious conduct occurred. 28 U.S.C. § 1346(b) (1996); Toole v. United States, 588 F.2d 403, 406 (3d Cir. 1978); O'Neal v. Department of Army, 852 F. Supp. 327, 334-35 (M.D. Pa. 1994); Turner v. Miller, 679 F. Supp. 441, 443 (M.D. Pa. 1987). However, in cases such as this that involve federal prisoners, it has been recognized that the government's duty of care is one of ordinary diligence. See 18 U.S.C. § 4042; Turner, 679 F. Supp. at 443. The applicable law with respect to the burden and quantum of proof under the FTCA remains that of the state in which the alleged tortious conduct occurred. Hossic v. United States, 682 F. Supp. 23, 25 (M.D. Pa. 1987).

Under Pennsylvania law, a plaintiff is required to show that the defendant's negligence was the proximate cause of his injury by a preponderance of the evidence. Baum v. United States, 541 F. Supp. 1349, 1351 (M.D. Pa. 1982). Further, Pennsylvania law defines proximate cause as causation that was a

substantial factor in bringing about the injury. Hamil v. Bashline, 392 A.2d 1280, 1284 (Pa. 1978).

Additionally, under Pennsylvania law, in order to present a *prima facie* case of medical malpractice, i.e. medical negligence, a plaintiff has the burden of presenting an expert witness who can testify to a reasonable degree of medical certainty that the actions or omissions of the defendant deviated from acceptable medical standards, and that said deviation constituted a substantial factor in causing the plaintiff's injury. Simpson v. Bureau of Prisons, 2005 WL 2387631, at *5 (M.D. Pa. Sept. 28, 2005) (Vanaskie, C.J.). The only exception to this rule is where the matter "is so simple and the lack of skill or want of care is so obvious as to be within the range of ordinary experience and comprehension of even nonprofessional persons." Berman v. United States, 205 F. Supp. 2d 362, 264 (M.D. Pa. 2002) (citing Brannan v. Lankenau Hospital, 490 Pa. 588 (1980)). The instances when expert opinions may be unnecessary are rare. See Simpson, 2005 WL 2387631, at *6; Arrington v. Inch, 2006 WL 860961, at *7 (M.D. Pa. March 30, 2006) (Conner, J.).

It is undisputed that USP-Lewisburg owed Whooten a duty to provide him with timely and appropriate medical care. Plaintiff has submitted various medical records establishing his prior history of cluster headaches, the treatment and medications provided, and evidence supporting his claim of previously suffering

7

side effects, including intestinal bleeding, from the use of certain medications. (See Rec. Doc. 47). However, Whooten has not identified any medical expert or submitted a report from any medical expert in support of his surviving FTCA claims.

Defendants' initial dispositive motion generally sought summary judgment and dismissal on the basis that Whooten had not "plead a case of *prima facie* negligence and ha[d] failed to offer any expert medical testimony." (Rec. Doc. 39 at 20). Based on Plaintiff's aforementioned submissions and Defendants' failure to address the exception to the expert witness requirement, this Court previously concluded that Defendants' wholly conclusory argument of failure to plead a case of *prima facie* negligence lacked persuasion and, thus, allowed Whooten's FTCA claims of negligent medical care to proceed. (Rec. Doc. 52).

With respect to the pending Motion for Summary Judgment (doc. 79), the Remaining Defendant's supporting brief sets forth a detailed summary of the Plaintiff's medical history, including records pertaining to his pre-incarceration treatment. It argues that based on objective medical evidence, the care and treatment provided by the USP-Lewisburg Medical Staff did not fall below the standards for the profession.

The supporting brief includes a detailed argument that Whooten does not suffer from a GI bleed. This contention is supported by both institutional and pre-

incarceration medical records, as well as an opinion by Doctor Bussanich that the Plaintiff does not have a GI bleed and that any blood in his vomit would be common with his pattern of frequent vomiting.

The supporting brief also acknowledges that Plaintiff has suffered from cluster headaches since his adolescence. However, it contends that Plaintiff's objection to medications offered by the USP-Lewisburg Medical Staff is the result of his "propensity toward addictive use of the narcotic pain killer Nubain." (Rec. Doc. 82 at 12). Defendant notes that this conclusion is supported by Plaintiff's pre-sentence report and Doctor Bussanich's opinion, as set forth in the Doctor's sworn declaration.

Defendant's supporting brief correctly notes that there is an exception to the expert witness requirement under controlling Pennsylvania state law. However, the supporting brief contends that based on the nature of Plaintiff's allegations and undisputed facts, his case does not fall within the exception to the expert witness requirement.

In support of the instant Motion for Summary Judgment (doc. 79), the Remaining Defendant has submitted a declaration under penalty of perjury by Clinical Director Bussanich, a copy of the Plaintiff's deposition testimony, and various medical records. (See Rec. Doc. 83). Based upon that evidence, the Remaining Defendant concludes that Plaintiff's present claim simply represents

his disagreement with an appropriate course of treatment recommended by the USP-Lewisburg Medical Staff, because said plan involves the use of non-narcotic alternative medications.

On October 24, 2005, Plaintiff filed a Motion Requesting Appointment of an Expert Witness. (See Rec. Doc. 61). His Motion acknowledged that in order to succeed on his FTCA claim, he would need "to demonstrate at trial in part that there was a negligent breach of duty" that was the proximate cause of his injury.[3] Id. at 1. Plaintiff also admitted that his claim of medical negligence "might very well hinge on expert witness testimony or opinion." Id. at 2. By Order dated April 5, 2006, the Plaintiff's Motion was denied on the grounds that district courts are not authorized to provide expert witness fees for indigent parties. (Rec. Doc. 68). However, this Court noted that in the event this matter proceeded to trial, appointment of an expert witness under Rule 706 of the Federal Rules of Evidence would be considered.

Based on Whooten's own deposition testimony, it is undisputed that the Plaintiff's medical condition includes cluster headaches, depression, knee and shoulder problems, vomiting of blood, substance abuse, high blood pressure, and Hepatitis C. With the possible exception of Hepatitis C, those ailments, including

---

[3] Plaintiff suggested that one of his pre-incarceration medical providers from the Boston Medical Center be appointed as his expert. The Remaining Defendant has submitted copies of Plaintiff's records from said facility, which show that he was treated for gastritis "with no other sources of bleeding." (Rec. Doc. 83, Exh. 6, E-31).

10

the vomiting of blood, existed prior to the commencement of his ongoing federal incarceration. The thrust of Plaintiff's FTCA claim is that the USP-Lewisburg Medical Staff have prescribed to him medications known to have gastrointestinal side effects, which have caused him to suffer stomach pain and to vomit blood. The Remaining Defendant counters, via Doctor Bussanich's declaration under penalty of perjury, that the use of non-narcotic medications for treatment of the inmate's cluster headaches is appropriate. The Doctor adds that the vomiting of blood is due to Plaintiff's pattern of vomiting and not a side effect of the medications prescribed by the USP-Lewisburg Medical Staff. Bussanich further opines that Whooten engages in "narcotic/drug seeking behavior." (Rec. Doc. 83, Exh. 7, ¶ 43). The Doctor also notes that Nubain injections are still being provided to Plaintiff when needed for severe headaches.[4]

     This Court's review of the competent medical evidence submitted by the Remaining Defendant, which includes Doctor Bussanich's sworn declaration, adequately establishes that this case does not fall within the exception recognized in <u>Berman</u>. Plaintiff's claims do not involve allegations of denial or delays of needed treatment. Further, Plaintiff's submissions have not established that the actions taken by the USP-Lewisburg Medical Staff constituted an obvious lack of skill or want of care. Rather, the claims at issue herein relate solely to the quality

---

[4] Bussanich further indicates that Plaintiff's Interferon treatment for Hepatitis C, which began on December 19, 2005, can cause headaches.

11

of the care provided, and more specifically, the appropriateness of the medications prescribed by the USP-Lewisburg Medical Staff.

Thus, this is clearly the type of case where Plaintiff, in order to state a *prima facie* case of negligence under controlling Pennsylvania state law, must come forward and provide expert medical testimony showing that the Remaining Defendant's medical decisions deviated from acceptable standards of the profession. Plaintiff has failed to do so.

As previously noted, this Court has discretion to appoint an expert witness under Federal Rule of Evidence 706. "The policy behind this rule is to promote the jury's factfinding ability." Ford v. Mercer County Correctional Ctr., 171 Fed. Appx. 416, 420 (3d Cir. 2006). The Court of Appeals for the Third Circuit added that "[a] trial judge does not abuse his discretion in declining to appoint an independent expert solely to benefit a party who has otherwise failed to gather such evidence as would suffice to overcome summary judgment." Id.

Based on this Court's application of Ford to the present record, appointment of an expert witness at this time would clearly not be for the benefit of assisting a jury. Rather, appointment of an expert at this juncture would solely be for the purpose of assisting Plaintiff's opposition to the Motion for Summary Judgment. Plaintiff has failed to come forward with an expert witness or any other competent medical evidence to support his assertions of negligence. Based on an application

of standards announced in Ford, the Court feels that it would be an abuse of discretion to appoint an expert witness under Rule 706 at this stage of the proceedings. The Remaining Defendant is entitled to entry of summary judgment with respect to the surviving FTCA portion of this action.

An appropriate Order shall issue.